2012 Ark. 38

**Rodney JONES, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CR 11–576.**

Supreme Court of Arkansas.

Feb. 2, 2012.

William Owen James, Jr., Little Rock, for appellant.

Dustin McDaniel, Atty. Gen., for appellee.

KAREN R. BAKER, Justice.

A Van Buren County jury convicted appellant Rodney Jones of capital murder in the shooting death of his ex-wife, Orzona Fischer. The jury sentenced appellant to life imprisonment without parole. Our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(a)(2) (2011). Appellant raises three points for reversal. We find no merit in any of his arguments and affirm.

Because appellant does not challenge the sufficiency of the evidence and the salient facts of the case are not in dispute, only a brief recitation of the facts is necessary. On September 5, 2008, appellant traveled from Thornton, Colorado, to Clinton, Arkansas, where his ex-wife and their three children lived with her husband, Lynn Fischer. Appellant drove approximately fifteen hours, arriving in Clinton late afternoon. After resting, appellant drove to the Fischers' residence, parked a short distance from the house, and took a position approximately 30 feet from the front window of the house. Appellant was armed with a scoped, Marlin lever-action 30–30 that he brought with him from Colorado, and he fired one shot into the front window of the residence, fatally striking Mrs. Fischer in the back.

Members of the Van Buren County Sheriff's Department and the Arkansas State Police Department investigated the murder. State Police agents Stacy Rhoads and Joe Carter traveled to Thornton, Colorado, to interview appellant. They first interviewed appellant on September 6, 2008. The officers advised appellant of his *Miranda* rights, which he waived. During the interview, appellant claimed to have been in Colorado at the time of the shooting. The interview, including appellant's waiver, was videotaped.

After their attempts to corroborate appellant's alibi failed and they received incriminating information from appellant's girlfriend, the officers interviewed appellant a second time. Again, the officers read appellant his *Miranda* warnings, and the interview was videotaped and recorded. After the officers confronted appellant with contradictions in his story and told him that they had been unable to corroborate his alibi, appellant confessed. Appel-

lant gave a detailed account of how he carried out the crime, as well as the location in Kansas where he disposed of the murder weapon. At the end of the second interview, appellant invoked his right to remain silent and asked for an attorney, at which time, the interview terminated.

On September 8, 2008, appellant was charged with capital murder in the shooting death of Mrs. Fischer. At trial, appellant raised the affirmative defense of not guilty by reason of mental disease or defect. The jury found appellant guilty of capital murder and sentenced him to life in prison without parole.

|₃For his first and second points on appeal, appellant asserts that the trial court erred in denying his motions for a mistrial. He first asserts that the circuit court should have granted a mistrial when the State impermissibly inflamed the passions of the jury during the closing argument, and then that the court should have granted a mistrial when the State referred to appellant's invocation of his right to seek counsel.

■ In closing argument following the guilt or innocence phase of the trial, the State made the following remarks:

> You know, that girl right there [Mrs. Fischer] is gone forever. That life is taken. She's gone. That—those two little girls and that little boy, there's no more birthdays, no more holidays. There's always the empty chair the rest of their lives. And it's not just the holidays and the events and all that. . . .

Defense counsel requested a bench conference and asked for a mistrial. The circuit court denied the motion, and defense counsel requested an admonition, but stated "I don't think that's sufficient to fix the problem, but I do have to ask for an admonition." The circuit court told the jury:

> Ladies and gentlemen of the jury, you have been instructed in the instructions that you should not permit sympathy, prejudice, or like or dislike of any party to this action or of any attorney to influence your findings in this case. I'm going to admonish you to disregard the last statement of counsel.

Appellant argues that the trial court abused its discretion in not declaring a mistrial.

■ A mistrial is a drastic remedy that should only be granted when justice cannot be served by continuing the trial. *Woodall v. State*, 2011 Ark. 22, 376 S.W.3d 408. The circuit court has the sound discretion to decide whether to grant a mistrial, and this decision will not be overturned absent a showing of abuse or upon manifest prejudice to the complaining party. |₄*Id.* The trial court is given broad discretion to control counsel in closing arguments. *Lee v. State*, 326 Ark. 529, 532, 932 S.W.2d 756, 758 (1996). Closing remarks requiring reversal are rare and must invoke an appeal to the jurors' passions. *Id.* An admonition to the jury usually cures a prejudicial statement unless it is so patently inflammatory that justice could not be served by continuing the trial. *Zachary v. State*, 358 Ark. 174, 178, 188 S.W.3d 917, 920 (2004).

In this case, the court sustained appellant's objection and admonished the jury not to let prejudice or sympathy influence its decision. Appellant argues on appeal that the State's only purpose in making the statements was to inflame the passions of the jury. The State points out that appellant's own confession described that he was motivated, in part, by his desire to take his children away from his ex-wife. We hold that the statement was not so inflammatory that justice could not be served by continuing the trial, and we find

no abuse of discretion in the circuit court's denial of appellant's motion for a mistrial.

Appellant's second argument concerns his motion for a mistrial following his objection to an answer that a police officer gave during his testimony that referred to appellant's request to cease the interview and consult with an attorney. During trial, the prosecutor questioned Detective Carter on direct examination regarding the statement that appellant gave during the second interview. Appellant gave the statement following the waiver of his *Miranda* rights. In response to questioning, Detective Carter testified that the interview terminated when appellant invoked his right to remain silent and asked for an attorney. The circuit court had previously ruled that the statement was admissible at a hearing on appellant's motion to suppress the statement. At trial, appellant objected on the basis that the officer's statement regarding appellant's invocation of his rights violated his Fifth Amendment rights. The court inquired as to the nature of appellant's objection and requested appellant's counsel to prepare a curative instruction, which stated as follows:

> Members of the jury, you are instructed to disregard any testimony regarding [appellant's] invocation of his rights to remain silent or to an attorney with regard—as a—by the Fifth Amendment of the Constitution of the United States. No inferences to be drawn regarding [appellant's] guilt or innocence. It will be disregarded by you completely.

On appeal, appellant asserts that the officer's testimony violated due process and prejudiced his trial by informing the jury of his invocation of his right to counsel, giving the appearance that he was not telling the whole truth and that he was being dishonest, and by showing a level of sanity and awareness rebutting appellant's defense of mental disease or defect. Appellant argues that the officer's statement was thus an improper comment on his silence and amounted to a *Doyle* violation, requiring our reversal.[1] However, appellant is making an argument on appeal that he did not make to the circuit court. This he cannot do. Even in a case in which a sentence of life without parole has been imposed, the appellant is bound by the scope of the argument he made at the trial level. *Ferrell v. State*, 325 Ark. 455, 929 S.W.2d 697 (1996); *see also Pike v. State*, 323 Ark. 56, 60, 912 S.W.2d 431, 433 (1996) (stating "our duty is only to examine the record for error on objections decided adversely to the appellant, not to address arguments that might have been made"). We decline to address this argument because appellant did not present it to the circuit court as a basis for his motion for a mistrial. The circuit court clearly requested a curative instruction to remedy any proposed error that appellant claimed, and the instruction that appellant's counsel submitted and that the court gave to the jury was solely on the basis of appellant's Fifth Amendment rights and not an alleged *Doyle* violation.[2]

1. In *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the United States Supreme Court held that "the Due Process Clause bars 'the use for impeachment purposes' of a defendant's postarrest silence." *Tarkington v. State*, 313 Ark. 399, 402, 855 S.W.2d 306, 308 (1993).

2. Even if we addressed the *Doyle* violation, the circuit court's denial of appellant's motion for a mistrial was not an abuse of discretion. Our decision in *McIntosh v. State*, 296 Ark. 167, 753 S.W.2d 273 (1988), where we held that no *Doyle* violation had occurred, is instructive. In *McIntosh*, a police officer made a remark that "all three [appellants] made no comment." The trial court there did not permit the prosecutor to attempt to use the appellants' silence for impeachment purposes or

Lastly, appellant argues that the circuit court erred in failing to instruct the jury on the lesser-included offenses of reckless manslaughter and negligent homicide. Prior to trial, appellant's counsel requested jury instructions on both forms of manslaughter—recklessly and under extreme emotional disturbance—and negligent homicide. The court granted the request for the instruction on extreme-emotional-disturbance manslaughter and gave the instruction to the jury, but denied the instructions on reckless manslaughter and negligent homicide. For reversal, appellant now asserts that there was testimony furnishing a reasonable basis on which appellant could have been found guilty of the lesser offenses. We find no error.

An instruction on a lesser-included offense is appropriate when it is supported by even the slightest evidence. *Sweet v. State*, 2011 Ark. 20, 370 S.W.3d 510. However, we will affirm the circuit court's decision to not give an instruction on the lesser-included offense if there is no rational basis for doing so. *Boyle v. State*, 363 Ark. 356, 214 S.W.3d 250 (2005); *see also* Ark.Code Ann. § 5–1–110(b) (Supp. 2009). A circuit court's ruling on whether to submit a jury instruction will not be reversed absent an abuse of discretion. *Id.*

Appellant contends that he was entitled to instructions on reckless manslaughter and negligent homicide. The circuit court refused to give these instructions on lesser-included offenses. Appellant's counsel proffered the following instruction on reckless manslaughter, which is based on Arkansas Code Annotated sections 5–10–104(a) (Supp.2007) and 5–2–202(3) (Repl.2006):

AMCI 2d 1004

MANSLAUGHTER

To sustain this charge the State must prove beyond a reasonable doubt that: Rodney Jones recklessly caused the death of Orzona Fischer.

DEFINITIONS

"Recklessly."—A person acts recklessly with respect to the results of his conduct when he consciously disregards a substantial and unjustifiable risk that the results will occur. The risk must be of a nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the same situation.

Appellant's counsel also proffered the following instruction on negligent homicide based on Arkansas Code Annotated sections 5–10–105(b) (Supp.2009) and 5–2–202(4) (Repl.2006):

AMCI 2d 1005

NEGLIGENT HOMICIDE

To sustain this charge the State must prove beyond a reasonable doubt that:

Rodney Jones negligently caused the death of Orzona Fischer.

DEFINITIONS

The term "negligently" as used in this criminal case means more than it does in civil cases. To prove negligence in a criminal case the State must show that Rodney Jones should have been aware of a substantial and unjustifiable risk that the death would occur. The risk must have been of such a nature and degree that his failure to perceive it, considering that nature and purpose of his conduct and the circumstances known to him, involved a gross deviation from the standard of care that a reason-

---

to call attention to their silence. *Id.* at 173, 753 S.W.2d at 276. Likewise, in this case the

circuit court did not permit such use of appellant's silence or request for an attorney.

able person would have observed in his situation.

Appellant urges us to find a rational basis in the evidence for giving these instructions. Appellant contends that the testimony of Dr. Bob Gale, a forensic neuropsychiatrist, could have led the jury to conclude that although he did not possess a mental disease or defect sufficient to be found not guilty, the jury could have found that his mental infirmities did cause him to be reckless or negligent in his action. Appellant argues that his mental disease and defect prevented him from conforming his conduct to the requirements of the law necessary to form the mental state for the greater offenses.

The circuit court properly refused the instructions on reckless manslaughter and negligent homicide. The evidence at trial showed that appellant traveled approximately fifteen hours from Colorado to Arkansas, rested for awhile, and then watched and shot his ex-wife with a deer-hunting rifle that he had brought with him from Colorado. Appellant shot once into the house, mortally striking Mrs. Fischer in the back. He immediately returned to Colorado, disposing of the murder weapon on the way. Appellant offers no rational basis to support giving either instruction on the basis that his actions were reckless or negligent. Further, appellant cites us to no relevant authority to support finding a rational basis for giving ₉either of these instructions in our case law, and such a finding would run counter to our prior case law. *See, e.g., Ellis v. State,* 345 Ark. 415, 47 S.W.3d 259 (2001) (pulling up and shooting a victim once in the stomach is not reckless conduct); *Norris v. State,* 2010 Ark. 174, 368 S.W.3d 52 (2010) (affirming the circuit court's denial of an instruction on negligent homicide where there was no evidence that the appellant was unaware that his conduct, or the risk of his conduct, would result in the victim's death). We conclude that there was no rational basis for the circuit court to instruct the jury on reckless manslaughter or negligent homicide.

In addition to the arguments raised by appellant, we have reviewed the record pursuant to Arkansas Supreme Court Rule 4–3(i) (2011), and we have found no prejudicial error that would warrant reversal.

Affirmed.