Cite as 2022 Ark. App. 357

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CR-21-439

| | | |
|---|---|---|
| CHARLES STEPP | | Opinion Delivered September 28, 2022 |
| | APPELLANT | |
| | | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23CR-20-313] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE TROY B. BRASWELL, JR., JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

Charles ("Charlie") Stepp was convicted by a Faulkner County Circuit Court jury of three counts of raping his young daughter, B.W. The circuit court, following the jury's sentencing recommendations, imposed forty-year sentences on each count to run consecutively. In appealing his convictions, Stepp's sole argument centers on the circuit court's denial of his pretrial rape-shield motion. We affirm.

On April 16, 2019, B.W., who was eight years old at the time, reported to the staff at Eastside Elementary in Greenbrier that she had been raped by her father, Charlie. During lunch in the cafeteria that day, she told a paraprofessional she had gotten in trouble at home and that her mom encouraged her dad to take his private parts and stick it into her private parts. School staff also testified that they noticed B.W. was uncomfortable or had difficulty

sitting and complying with staff direction to do so at school that day, which was not a normal issue for her.

A jury trial was held on May 19–20, 2021. The State presented evidence that B.W. was examined at Arkansas Children's Hospital where her labia minora and hymen were observed to have erythema—or redness—and tenderness, and B.W. was experiencing pain or discomfort as a result. Dr. Karen Farst, a pediatrician who specializes in child abuse, examined B.W. and noted that evidence was collected with a sexual-assault kit. Dr. Farst stated that the findings from the examination were consistent with a penetration injury caused by sexual abuse. The evidence collected included B.W.'s underwear, which was submitted to the Arkansas State Crime Laboratory, along with other evidence. The presence of seminal fluid was detected in her underwear, and YSTR-DNA analysis of the underwear effectively excluded anyone except Stepp or his paternal relatives.

At trial, eleven-year-old B.W. testified that in April 2019, she reported to teachers at Eastside Elementary "[m]y dad put his private in mine." B.W. testified that the incident had happened at her home in Greenbrier, when her mother, Nancy, dragged her into her father Charlie's room. Her father then inserted his private into hers as a form of punishment while her mother watched. He did not stop when she asked him to, but he stopped when her mother said, "Stop, that's enough." B.W. observed something white, which came from her father's "private" after he had stopped. B.W. took a shower afterwards, but she wore the same clothes to school.

B.W. recalled that she had been raped by Stepp "countless" times, always in Charlie's room. She specifically recalled another incident when she was five years old when her mother was also present for the rape in Charlie's room. B.W. further recalled another incident when her father put a clear gel from a container on her private parts. B.W. identified a drawing she had made during the investigation, which depicted her on a bed, while Charlie was putting gel on her, and her mother was sitting beside the bed. B.W. also testified that she had circled what she meant by "private" on diagrams of male and female anatomy and stated that when Charlie put his private into her private, it hurt.

At the conclusion of the two-day trial, the jury found Stepp guilty of all three counts of rape. He was sentenced to a total of 120 years' imprisonment in the Arkansas Department of Correction. This timely appeal followed.

Stepp appeals the circuit court's denial of his motion to introduce evidence otherwise excludable by Arkansas Code Annotate section 16-42-101 (Supp. 2021), the "rape- shield" statute. Under the rape-shield statute, the prior sexual conduct of a victim is not admissible by the defendant "to attack the credibility of the witness, to prove consent or any other defense, or for any other purpose." Ark. Code Ann. § 16-42-101(b). The purpose of the statute "is to shield victims of sexual abuse or rape from the humiliation of having their personal conduct, unrelated to the charges pending, paraded before the jury and the public when such conduct is not relevant to the defendant's guilt." *Woodall v. State*, 2011 Ark. 22, at 4, 376 S.W.3d 408, 411.

The statute does have a mechanism through which the circuit court may consider whether usually excluded evidence is admissible. This requires the circuit court to hold an in camera hearing to determine whether such evidence would be relevant to a fact at issue and whether the probative value outweighs its inflammatory or prejudicial nature. Ark. Code Ann. § 16-42-101(c). The circuit court has discretion to determine whether such evidence is relevant, and its ruling will not be reversed unless the decision constitutes clear error or a manifest abuse of discretion. *Woodall*, *supra*.

In Stepp's pretrial motion, he argues that under the rape-shield statute, he should be permitted to present evidence at trial of the alleged victim's prior sexual conduct with another family member––her male cousin, H.S., who was also a minor. Stepp reserved disclosure of any details for the in-camera hearing. The State responded to the written motion and argued that any evidence would be inadmissible under governing precedent and Rule 411 of the Arkansas Rules of Evidence.

Under Arkansas Rule of Evidence 411(b), "evidence of a victim's prior allegations of sexual conduct with the defendant or any other person, which allegations the victim asserts to be true . . . is not admissible by the defendant . . . to attack the credibility of the victim." Even so, after holding a hearing and entering a written order, the circuit court can admit the evidence if (i) it is relevant and (ii) its probative value outweighs its inflammatory or prejudicial nature. Ark. R. Evid. 411(c)(2)(C). Thus, the rule is not a total bar to evidence of a victim's sexual conduct but makes its admissibility discretionary with the circuit court under the procedures set out in the rule. *State v. Kindall*, 2013 Ark. 262, at 6, 428 S.W.3d

486, 490. In determining whether the evidence is relevant, the circuit court is vested with much discretion, and we will not overturn the circuit court's decision unless it constituted clear error or a manifest abuse of discretion. *Id.*

The State also filed a separate motion in limine to exclude the same evidence under Rule 403 of the Arkansas Rules of Evidence. Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

On the morning of trial, Stepp's motion was heard by the court. Stepp argued that, during an investigatory interview of B.W., she referenced an incident involving H.S. This incident allegedly occurred in the weeks prior to the April 2019 disclosure of the alleged rape by her father. This evidence, Stepp argued, was relevant and admissible regarding a defense that B.W. gained her sexual knowledge from the prior incident. Stepp contended that "most children would not know what sex is or not know what a penis is and would not be familiar with sexual acts [and] my client's defense in this matter involves him simply stating that [the rapes] did not occur." Thus, he argued, "the child's knowledge or information about those things are from [H.S.]; they are not from [Stepp]."

In making his argument, Stepp relied on *State v. Townsend*, 366 Ark. 152, 158, 233 S.W.3d 680, 685 (2006), in which our supreme court approved a five-factor test to consider whether the prior sexual conduct of a child is admissible to prove an alternate source of the child's sexual knowledge. The *Townsend* factors are "(1) that the prior act clearly occurred;

5

(2) that the acts closely resembled those of the present case; (3) that the prior act is clearly relevant to a material issue; (4) that the evidence is necessary to the defendant's case; (5) that the probative value of the evidence outweighs its prejudicial effect." *Id.* at 158, 233 S.W.3d at 685. With this precedent in mind, we turn to the present case.

Stepp maintained that the prior sexual incident between B.W. and H.S. had "clearly occurred" in light of the fact that the State did not deny B.W.'s purported allegations regarding the prior incident; therefore, the first *Townsend* factor was satisfied. Stepp argued that the State, having based its criminal prosecution of Stepp on B.W.'s allegations against him, could not take an inconsistent position and deny B.W.'s allegations about a prior incident with her cousin. Stepp also argued that the two incidents closely resembled each other, the second *Townsend* factor, because B.W. made "identical" statements that her cousin—and later, Stepp—each had put his private into her private. Stepp argued that the victim's allegations were "clearly relevant," the third factor under *Townsend*, because the prior incident was an alternate explanation of the source of B.W.'s sexual knowledge, which, in turn, supported Stepp's claim of innocence. On this basis, Stepp argued that he was entitled "to cross-examine and confront [B.W.] regarding those issues."

Regarding the fourth *Townsend* factor, Stepp similarly argued that any evidence as to the source of B.W.'s sexual knowledge was necessary to his client's defense. As to the final *Townsend* factor, Stepp argued that the probative value of any evidence of an alternate source of B.W.'s sexual knowledge outweighed any prejudice from "[s]imply asking the child [at

6

trial] regarding things that happened with her cousin within a month of this incident occurring[.]"

In response, the State proffered an investigatory report regarding the incident involving H.S. as well as DNA-analysis reports from the Arkansas State Crime Laboratory. The State argued that the defendant failed to meet his burden under *Townsend* as well as pursuant to Rule 411 of the Arkansas Rules of Evidence. The State also opposed Stepp's motion on the basis of the inadmissibility of the evidence under Rule 403 of the Arkansas Rules of Evidence. After Stepp replied to the State's argument, the circuit court denied his motion on multiple grounds.

Primarily, the court ruled that Stepp failed to present evidence sufficient to establish admissibility under *Townsend*. The circuit court cited precedent, including *Townsend*, in which the Arkansas Supreme Court held "that the defense had not proven that the acts— prior act—had clearly occurred simply because there were prior allegations." The circuit court ruled that Stepp's argument surrounding B.W.'s allegations involving her cousin—including the fact there had been no conviction—had not satisfied the first *Townsend* factor that there was "clear proof that a prior incident had, in fact, occurred."

The circuit court then ruled that Stepp also had not met his burden on any other *Townsend* factor, starting with "the second [*Townsend*] factor—that the acts closely resembled those of the present case." While finding "some similarities," the pending charges addressed criminal acts by an adult against a child, while the alleged prior incident was between two children and, the court found, the only "basic similarity is that there was some sort of sexual

7

contact." The court ruled that was not "sufficient enough to show that [the acts] closely resembled each other."

On the remaining *Townsend* factors, the court ruled, as to the third factor, "any interaction that [B.W.] had, [and] what may or may not have happened with [H.S.], is not relevant to whether [Stepp] raped the victim." Regarding the fourth and fifth factors, the circuit court found Stepp's argument unconvincing in that "the evidence [of the prior incident] is necessary to prove that the defendant is not guilty[.]" The court ruled that the probative value of the alleged evidence was "outweighed by the prejudicial effect of the juvenile victim having to potentially talk about a collateral issue or another alleged incident that may or may not have occurred."

After these rulings based on *Townsend*, the circuit court additionally ruled that not only had Stepp failed to put on evidence that the prior incident clearly occurred, but also "if a defendant wants to address a prior incident for basis of [the victim's purported sexual] knowledge," the incident "must, in fact, be a prior occurrence." The circuit court found that "[t]he allegations are that there were incidents [of rape] that occurred years before the [H.S.] incident [which] means that the [H.S.] incident is not a prior act to those two counts [and] for that reason, the defense argument fails." The court also ruled that the evidence of the alleged prior incident with H.S. was irrelevant because the charges were that Stepp had raped his child and, thus, "[w]hether or not this juvenile engaged in any consensual acts with another child is irrelevant because this is not a case where consent is an issue."

The court concluded its rulings on the rape-shield issue by noting that DNA evidence, which excluded B.W.'s cousin and any other person except Stepp or a paternal relation of Stepp's, also played a role. The court ruled that "from the cuttings [of the victim's underwear] that were taken—and that's been introduced by the exhibits—they were only introduced for the purposes of this in-camera hearing which further supports the idea that the defense has not proven that these prior incidents with [H.S.] did in fact occur." The court then moved to other pretrial issues, the trial commenced immediately thereafter, and Stepp was convicted by a jury.

On appeal, Stepp argues that the circuit court erred by excluding evidence that B.W. obtained her sexual knowledge from an alleged prior incident with H.S. Like his argument below, his appellate argument centers on the *Townsend* case, focusing on the admissibility of evidence of a child's prior sexual knowledge when necessary to "prevent the jury from assuming that the defendant is responsible for the child's lack of sexual innocence." *Townsend*, 366 Ark. at 157–58, 233 S.W.3d at 684.

A failure to meet any one factor means the evidence proffered by the defendant does not fall within the rape-shield exception. *See Joyner v. State*, 2009 Ark. 168, at 7, 303 S.W.3d 54, 58 (holding that when one *Townsend* factor is not met, it is unnecessary to discuss remaining factors). On review, Stepp must establish that the circuit court's evidentiary rulings regarding each of the five factors constituted clear error or a manifest abuse of discretion. *See Sweeten v. State*, 2018 Ark. App. 590, at 2, 564 S.W.3d 575, 577. A circuit court has a great degree of latitude and discretion in reaching such determinations. *Id.*

Further, an "abuse of discretion is a high threshold that does not simply require error in the trial court's decision, but requires that the trial court act improvidently, thoughtlessly, or without due consideration." *Dowdy v. State*, 2015 Ark. 35, at 3.

Under an analysis of the *Townsend* factors, we do not find Stepp's appellate argument persuasive. The first required *Townsend* factor is whether a "prior act clearly occurred." The circuit court found that Stepp failed to prove this factor. We note that the *Townsend* factors were adopted because "a comparison of the child's descriptions of the respective sexual encounters . . . provides a basis for an assessment and comparison of the child's degree of sexual knowledge at the time of each incident." *State v. Blandin*, 370 Ark. 23, 28, 257 S.W.3d 68, 72 (2007) (quoting *Townsend*, 366 Ark. at 158, 233 S.W.3d at 685).

The evidence indicated that Stepp had raped B.W. on at least three occasions over a period of several years. The alleged "prior act" between B.W. and her cousin, H.S., allegedly occurred after Stepp had already raped B.W. twice. Consequently, the alleged prior act between B.W. and H.S. was not a prior act as contemplated by the first *Townsend* factor.

Stepp has failed to meet the first factor; therefore, it is not necessary to discuss the remaining factors. *See Joyner, supra.* Because Stepp has failed to meet the test set out in *Townsend*, it was not a manifest abuse of discretion for the circuit court to exclude the evidence at issue here. We affirm.

Affirmed.

HARRISON, C.J., and HIXSON, J., agree.

*Robert M. "Robby" Golden*, for appellant.

10

*Leslie Rutledge*, Att'y Gen., by: *David L. Eanes, Jr.*, Ass't Att'y Gen., for appellee.